UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| E&B SPORTING GOODS,<br>    Petitioner,<br><br>v.<br><br>SUSAN MCCARRON, in her capacity as<br>DIRECTOR OF INDUSTRY OPERATIONS,<br>US DEPARTMENT OF JUSTICE, FIREARMS<br>AND EXPLOSIVES, JOHN SNOW, in his<br>capacity as DIRECTOR OF THE US DEPT. OF<br>TREASURY, BRADLEY BUCKLES, in his<br>capacity as DIRECTOR OF THE BUREAU OF<br>ALCOHOL, TOBACCO, FIREARMS, AND<br>EXPLOSIVES,<br>    Respondents. | CIVIL ACTION NO.<br>3:04-CV-1535(JCH)<br><br><br><br>FEBRUARY 21, 2006 |

**RULING RE: RESPONDENT'S MOTION
FOR SUMMARY JUDGMENT [Doc. No. 21]**

The petitioner, E&B Sporting Goods, brings this action pursuant to section 923(f)(3) of Title 18 of the United States Code, seeking <u>de novo</u> review of the denial of its application for a federal firearms license. The respondents (hereinafter "the ATF"), who are the various agency directors responsible for administrative decisions regarding federal firearms licenses, move for summary judgment, arguing, <u>inter alia</u>, that no genuine issue of material fact exists with regards to whether the ATF was authorized to deny E&B Sporting Goods the renewal of its firearms license, and that it is entitled to judgment as a matter of law. For the following reasons, the ATF's motion for summary judgment is GRANTED.

**I.  FACTUAL BACKGROUND[1]**

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving party, here the petitioner, where there is evidence to support its allegations.

E&B Sporting Goods is a corporation owned and operated by Robert Williamson and Esther Williams in Salem, Connecticut.[2] Williams is the president of E&B, which has been authorized to sell firearms since 1987.

In June of 2000, an ATF agent conducted a compliance inspection of E&B Sporting Goods. The inspection revealed several violations of the Gun Control Act of 1968 ("GCA"), 18 U.S.C. 921 et seq., and related regulations governing firearm licensees, including several violations stemming from failures to properly complete ATF Form 4473 in making a firearm transaction. In particular, the inspection found that, on two occasions, E&B Sporting Goods failed to have firearm purchasers complete the "prohibited persons" portion of Section A of Form 4473; on seven occasions, E&B Sporting Goods failed to complete the NICS portion (i.e., criminal record check) of Section B of Form 4473; on seven occasions, E&B Sporting Goods failed to record information about the type of firearm sold to the purchaser in Section B of Form 4473; and, on seven occasions, E&B Sporting goods failed to complete Section D of Form 4473, which requires firearm dealers to sign and certify the date on which a firearm is transferred.

Following completion of the inspection, Robert Williamson signed a "Firearms Application/Compliance Inspection Checklist," which he also initialed in 42 places that corresponded to the various statutory and regulatory obligations of firearms dealers, thereby attesting that the "above information was thoroughly explained to me by an ATF

---

[2]Esther Williams is referred to throughout both parties' pleadings as "Esther Williamson" and "Esther Williams." The court will refer to her as "Esther Williams," given that is the name with which she signed her affidavit. Pet's Rule 56(a)(2) Statement, Williams Aff., Ex. 6.

2

Inspector and any questions regarding the above information were answered." Resp's Rule 56(a)(1) Statement, ¶ 11, Ex. L4.  In its Rule 56(a)(2) Statement, E&B Sporting Goods states that "Mr. Williamson did not correctly understand the explanation of the ATF inspector and/or the explanation was unclear."  Pet's Rule 56(a)(2) Statement, ¶ 11.

E&B Sporting Goods received two citations for the violations found by the ATF Inspector in 2000.  Pet's Rule 56(a)(2) Statement, Ex. 1. E&B Sporting Goods states that it was not informed at the time of the 2000 inspections, either verbally or in writing, of its numerous violations, and only learned of the citations, and the reports associated with them, in 2002.  Id. at ¶ 9.  However, the ATF "Report of Violations" submitted by E&B Sporting Goods bears Robert Williamson's signature, dated June 15, 2000.  Id. at Ex. 1.  In addition, Williamson testified at the ATF licensing hearing that, in 2000, the ATF Inspector explained to him the violations for which E&B Sporting Goods had been cited.  Resp's Rule 56(a)(1) Statement, Ex. 1, Hrg. Tr., p. 48.

In 2002, ATF inspectors returned to E&B Sporting Goods for a follow-up inspection.[3]  The inspectors found additional violations involving the failure to properly complete 4473 forms, as well as other violations.  In December 2003, E&B Sporting Goods received a notice of denial regarding its firearms license that set out nine categories of violations.  Id. at Ex. G1.

A hearing was held at the ATF Boston Field Division in May 2004, at which Williamson and Williams were present and represented by counsel.  At the hearing, the

---

[3] The inspection began as a compliance inspection, but, because it lasted several months, it was ultimately considered a license renewal inspection.

ATF presented the testimony of the ATF inspector responsible for the 2003 inspection and 66 exhibits consisting of records recovered from E&B Sporting Goods. E&B Sporting Goods presented the testimony of Williamson, as well as six other exhibits. Following the hearing, the hearing officer found that E&B Sporting Goods had willfully violated federal law and regulations as alleged in the nine counts set out in the initial notice. In July 2004, the Director of Industry Operations of the ATF's Boston Field Division (" the Director") issued a final notice of denial of E&B Sporting Good's renewal application, and in doing so, adopted most, but not all, of the hearing officer's recommendations. The Director concluded that E&B Sporting Goods was unqualified to be a licensee do to its willful violations of the GCA and the regulations promulgated pursuant thereto.

In particular, the Director found that, on 20 of 24 alleged occasions, E&B Sporting Goods transferred firearms prior to conducting a NCIS criminal background check on the firearm buyers; on one occasion, E&B Sporting Goods failed to report missing or stolen firearms within 24 hours of learning the firearms were missing; on 95 occasions, E&B Sporting Goods failed to complete Section C of Form 4473; on one occasion, an NCIS denial for a prospective firearm purchaser was not properly maintained on record; on 24 of 25 alleged occasions, E&B Sporting Goods failed to properly record required firearm acquisition and disposition information; on one occasion, E&B Sporting Goods failed to properly document the residency verification of an alien firearm purchaser; on four occasions, E&B Sporting Goods failed to fully and accurately record NCIS information in Section B of Form 4473; and, on six occasions, E&B Sporting Goods failed to have firearms purchasers fully complete Section A of

Form 4473. Contrary to the findings of the hearing officer, the Director did not find that 47 instances in which Form 4473s were amended by E&B Sporting Goods were willful violations of the GCA.

At the hearing, Williamson, in his testimony, admitted that he had prior knowledge and notice of E&B Sporting Goods' legal obligations in relation to several categories of violations. Williamson testified that he was aware since "day one" that a NICS number must be obtained, and all NCIS information properly recorded, before a firearm could leave the store's premises. Resp's Rule 56(a)(1) Statement, Ex. 2, p. 50, 53. Williamson was aware that some guns had "got out" without a proper NCIS check having been performed. Id. at 70. Williamson also testified that he knew that NCIS denials must be maintained for a certain amount of time, that aliens need to demonstrate proof of residency before obtaining firearms, and that acquisition and disposition records must be accurately kept. Id. at 53, 58.

Williamson also, at the hearing, disclaimed having prior knowledge of some of the legal obligations he was charged with violating. Williamson testified that he believed that he was only required to report stolen, and not missing, firearms. Id. at 51. Williamson testified that he believed that Section C of Form 4473 was "optional," although he acknowledged that the language of Section C indicated that it was mandatory. Id. at 50-51. Williamson denied having received any NCIS denials. Pet's Rule 56(a)(2) Statement, ¶ 44. In addition, E&B Sporting Goods states that it has offered "plausible explanations" for its failure to properly complete 4473 Forms as charged. Id. at ¶ 39.

Following the Director's final notice of denial, E&B Sporting Goods brought this

action, pursuant to section 923(f)(3) of Title 18 of the United States Code, seeking a <u>de novo</u> review of the denial of its application for a federal firearms license. The ATF has moved for summary judgment, arguing, <u>inter alia</u>, that no genuine issue of material fact exists with regards to whether E&B Sporting Goods willfully violated the GCA and regulations promulgated pursuant thereto, and thus the ATF was authorized to deny E&B Sporting Goods' licence renewal application. E&B Sporting Goods concedes that it committed the violations found by the Director of Industry Operations; it only contests the Directors' finding that the violations were committed willfully. Pet's Mem. of Law, p. 7 [Doc. No. 41].

## II.    LEGAL STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Hermes Int'l v. Lederer de Paris Fifth Ave, Inc.</u>, 219 F.3d 104, 107 (2d Cir. 2000). The moving party bears the burden of showing that no genuine factual dispute exists. <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 133 (2d Cir. 2000) (citing <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1223 (2d Cir. 1994)). "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law." <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553 (2d Cir. 2005)(quotation marks omitted). When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the trier of fact. <u>Sologub v. City of New York</u>, 202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the

nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 255 (1986), and present such evidence as would allow a reasonable trier of fact to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a Summary Judgment Motion." Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).  Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the Summary Judgment Motion are not credible).  Moreover, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Jeffreys, 426 F.3d at 554.

Under section 923(f)(3) of Title 18 of the United States Code, a licensee is entitled to a de novo judicial review of a decision by the Attorney General denying or revoking a firearm dealing license.  In such a proceeding, a court may consider "any evidence submitted by the parties to the proceeding whether or not such evidence was considered" at a prior hearing.  18 U.S.C. § 923(f)(3).  The court may give the agency's findings such "'weight as it believes they deserve' but need not accord any particular deference to those findings." Article II Gun Shop, Inc. v. Ashcroft, No. 03-C-4598, 2005 WL 701053 (N.D.Ill. March 25, 2005)(quoting Stein's, Inc. v. Blumenthal, 649 F.2d 463,

466 (7th Cir. 1980); see also Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 348 F.Supp.2d 1299, 1306 (S.D.Ala. 2004), aff'd 415 F.3d 1274 (11th Cir. 2005). However, as one district court has observed, "[t]he language of § 923(f)(3) does not call upon this Court to decide whether it would revoke the license in it's [sic] own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license." Pinion Enter., Inc. v. Ashcroft, 371 F.Supp.2d 1311, 1315 (N.D.Ala. 2005) (noting section § 923(f)(3) only gives district court authority to reverse Attorney General if it finds that the Attorney General was not authorized to revoke license).

### III.   DISCUSSION

E&B Sporting Goods concedes that it violated the federal laws and regulations governing firearm licenses. It only disputes the finding by the ATF administrator that it willfully violated federal law, arguing that genuine issues of material fact exist with regard to the issue of E&B Sporting Goods' intent.

Under 18 U.S.C. § 923(d)(1)(C), the Attorney General has the authority to deny an application for a license to deal firearms if the applicant has willfully violated any provisions of the Gun Control Act of 1968 or any regulations issued thereunder. Although this issue has not been addressed in the Second Circuit, other circuit courts have concluded that a "violation is 'willful' for purposes of § 923 where a firearms dealer 'knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements.'" Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 415 F.3d 1274, 1276 (11th Cir. 2005) (quoting Lewin

v. Blumenthal, 590 F.2d 268, 269 (8th Cir. 1979)) (noting that four other circuit courts have adopted this standard). A showing of "bad purpose or evil motive" has not been required. Id. "Instead, the firearms dealer is considered to have acted willfully under § 923 if, with knowledge of what the regulations require, the dealer repeatedly violates those regulations." Id.; see also Appalachian Res. Dev. Corp. v. McCabe, 387 F.3d 461, 464 (6th Cir. 2004) (holding appellant willfully violated GCA where it had knowledge of obligations and repeatedly violated them); Cucchiara v. Sec'y of Treasury, 652 F.2d 28, 30 (9th Cir. 1981); Stein's v. Blumenthal, 649 F.2d at 467. Courts have also recognized that a single violation of the GCA is a sufficient basis for denying a firearms license application. Appalachian Res., 387 F.3d at 464 (citing cases).

In Willingham Sports, the licensee was found to have willfully violated the GCA where the ATF, on four separate occasions between 1987 and 2001, found violations by the licensee during inspections; the licensee proprietor had signed reports listing the various violations; and the proprietor testified that, as a licensed firearms dealer, he knew that the licensee was charged with knowing and understanding all regulations and that its license was contingent with compliance with those regulations. 415 F.3d at 1277. In Clust v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, No. 2:04-CV-839, 2005 WL 1651794 (S.D.Ohio July 13, 2005), the licensee was informed about the GCA recordkeeping requirements when he first obtained his license in 1996. Id. at *2. In 2001, an unannounced inspection revealed several violations, including a failure to properly complete Section A of Form 4473, failure to maintain an accurate inventory of firearms, and a failure to timely record acquisition and disposition of firearms. Id. In 2003, another unannounced inspection revealed a number of similar violations. Id.

The district court found that the licensee understood his obligations under the GCA and knowingly failed to abide by those obligations, thus establishing, as a matter of law, that he willfully violated the GCA. Id. at *5.

In the instant case, the undisputed evidence in the record demonstrates that E&B Sporting Goods had knowledge of its obligations under the GCA prior to the discovery of its numerous GCA violations in 2002. For example, Williamson's testimony, in which he stated that he was aware since "day one" of his obligations concerning NCIS procedures, establishes that he had knew of his obligations regarding NCIS checks under the GCA. Resp's Rule 56(a)(1) Statement, Ex. 2, p. 50, 53. The "Firearms Application/Compliance Inspection Checklist" that Williamson signed in 2000 also establishes that he had notice and knowledge of his obligations under the GCA prior to the violations that were discovered in 2002. The numerous violations discovered in the 2002 inspection, in light of the evidence concerning Williamson's prior knowledge of his legal obligations as a licensee and the record of the 2000 violations, provide a sufficient basis on which the ATF could conclude that E&B Sporting Goods willfully violated the GCA.

E&B Sporting Goods argues that a finding of prior knowledge, and therefore a finding of willfulness, is not authorized given its claim that, in 2000, E&B Sporting Goods was "neither informed of, nor given any report or document indicative of, the alleged 'numerous violations' it was cited for." Pet's Mem. of Law at 8. Williams and Williamson also attest these factual assertions in their affidavits. Pet's Rule 56(a)(2) Statement, Ex. 6, ¶ 9-10, Ex.7, ¶ 9-10. However, in his hearing testimony, Williamson stated that he was made aware of the 2000 violations by the ATF inspector when they

occurred, thus contradicting this statement in its pleadings and affidavits. Resp's Rule 56(a)(1) Statement, Ex. 1, Hrg. Tr., p. 48.  It is well settled that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous . . . testimony." Hayes v. New York City Department of Corrections, 84 F.3d 614, 619 (2d Cir. 1996).

Moreover, even if a factual dispute exists as to E&B Sporting Goods' claimed lack of notice of the violations in 2000, this factual dispute does not constitute a genuine issue of material fact with regard to the ATF's authorization to conclude that willful violations of the GCA had occurred.  Other undisputed evidence, as discussed above, establishes that E&B Sporting Goods had knowledge of its obligations under the GCA at the time that the violations in 2002 were discovered.  In other words, there is sufficient evidence in the record, apart from the disputed notice of the violations in 2000, from which the Attorney General could conclude that willful violations of the GCA had occurred.  See Pinion, 371 F.Supp.2d at 1315 (inquiry under § 923(f)(3) is whether evidence presented is sufficient to justify Attorney General's decision); 3 Bridges, Inc. v. United States, 216 F.Supp.2d 655, 659 (E.D.Ky. 2002) (finding factual dispute regarding notice of legal obligations not material given other admitted violations that qualify as willful).

E&B Sporting Goods also argues that there is "no evidence of any persistent pattern of violations; no evidence of repeated warnings; no evidence of a large number of violations; no continued evidence to properly maintain records; and clearly no pattern of deceit," and, thus, there is insufficient evidence from which to conclude that its

11

violations were willful.[4]  E&B Sporting Goods' factual assertions, however, are belied by the evidence in the record, including its own admissions.  The numerous admitted violations that formed the basis of the notice of denial in 2002, many of which are similar to the violations that were found to have occurred in 2000, constitute a large number of violations and evidence of a repeated failure over a period of time to properly maintain records.  While E&B Sporting Goods has suggested that it misunderstood, or was ignorant of, some of its obligations under the GCA, it has offered no explanation for several violations found in 2002, such as the twenty occasions on which it transferred firearms to buyers prior to conducting NICS checks.   As noted above, the lack of bad purpose on the part of E&B Sporting Goods is not relevant to the analysis of willfulness under section 923(d)(1)(D).  Accordingly, there is no genuine issue of material fact as to whether sufficient evidence exists to support the conclusion that E&B Sporting Goods willfully violated the GCA.  Thus, the court grants summary judgment in favor of the respondents.

## IV.    CONCLUSION

For the foregoing reasons, the respondents' summary judgment motion [Doc. No. 21] is GRANTED.  The clerk of court is directed to close the case.

---

[4] In making its argument, E&B Sporting Goods relies, in part, on Rich v. United States, 383 F.Supp. 797, 800 (S.D.Ohio 1974), in which the district court held that "willful" under 18 U.S.C. § 923(d)(1)(D) meant "purposeful, intentional" conduct.  This understanding of section 923(d)(1)(D) has been rejected by several courts.  See Cucchiara, 652 F.2d at 30; 3 Bridges, 216 F.Supp.2d at 658 (noting rejection by other courts).

**SO ORDERED.**

Dated this 21st day of February, 2006, at Bridgeport, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge